## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No. 16-cv-20070-PAS

Bacardi USA, Inc.,

            Plaintiff,

v.

Young's Market Company,

            Defendant.

_____/

## ORDER DENYING MOTION FOR DISCOVERY
## AND GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on Defendant's Motion to Dismiss the Complaint [DE-19] and Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery [DE-23]. Plaintiff, Bacardi USA ("BUSA"), filed this Declaratory Judgment Act action after terminating its 2004 distributor agreement with Defendant, Young's Market Company in California ("Young's"), and selecting a new distributor in a request for proposals ("RFP") process.[1] BUSA's seven-count Complaint seeks numerous declarations, including that BUSA's termination of Young's and new distributor selection did not violate the 2004 distributor agreement, the RFP process, or various antitrust laws. BUSA also seeks a declaration that no basis exists to interfere with BUSA's decision to use a new distributor.[2]

Defendant Young's motion asserts the Court lacks subject matter jurisdiction because no justiciable controversy existed when BUSA filed its Complaint. While Young's was notified in September of 2015 that BUSA was terminating the 2004 distributor agreement (effective March

---

[1] On January 7 & 8, 2016, BUSA filed dozens of nearly identical lawsuits—in federal and state court—against distributors whom BUSA had terminated, including Young's and its related entities in several other states. As a result, Young's is currently a defendant in four additional federal cases in this district and in five state cases that BUSA filed in the Eleventh Judicial Circuit of Florida.

[2] BUSA's new distributor, Southern Glazer's Wine and Spirits, LLC, is not a party to this lawsuit.

2016), Young's never threatened BUSA with litigation or otherwise disputed that termination. Further, Young's was not notified that BUSA had selected a different distributor until after BUSA's Complaint was filed. Therefore, Young's says no actual controversy existed at the time of the Complaint. In response, BUSA claims jurisdiction attached when BUSA selected a different distributor, regardless of Young's awareness of that decision. BUSA also maintains that the litigiousness of the alcohol industry, generally, combined with discontent among other terminated distributors and Young's post-Complaint behavior, establishes a controversy sufficient for jurisdiction.

After Young's motion to dismiss became ripe, BUSA moved to conduct jurisdictional discovery. BUSA's broad request sought, for example, information regarding Young's assessment of potential claims and Young's internal communications before *and after* BUSA's Complaint was filed. [DE-26, p. 1-3.] However, jurisdictional discovery is not necessary for the resolution of Young's motion. Even if the Court has subject matter jurisdiction over some or all of BUSA's claims, BUSA's cause of action does not align with the purpose of the Declaratory Judgment Act. Therefore, for the reasons discussed below, the Court declines to accept jurisdiction, denies BUSA's request for jurisdictional discovery, and dismisses the Complaint without prejudice.[3]

## I.   FACTUAL BACKGROUND

The basic facts are undisputed. In 2004, BUSA and Young's entered into a Distributor Agreement (the "2004 Agreement") whereby Young's was appointed as BUSA's distributor of Bacardi products in California. The 2004 Agreement remained in place in the summer of 2015, when BUSA notified Young's it was initiating an RFP process to select future distributors.

---

[3] Young's moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6). Because the Court declines to exercise jurisdiction over BUSA's Complaint even if there is subject matter jurisdiction under Rule 12(b)(1), it is not necessary to reach a determination as to whether BUSA failed to state a claim under Rule 12(b)(6).

Young's agreed to participate by signing an Intent to Bid form and the Terms and Conditions—

collectively, the "RFP Agreement." On September 29, 2015, while Young's was participating in

the RFP process, BUSA notified Young's that it would be terminating the 2004 Agreement as of

March 31, 2016. Young's continued to participate in the RFP process until January 8, 2016 when

BUSA notified Young's that Young's had not been selected in the RFP process—and of this

lawsuit—via letter, which read in pertinent part:

> BUSA anticipates a smooth and amicable transition of the [sic] services. However, as a
> precautionary measure to protect its interests, BUSA has filed declaratory judgment
> actions in the Southern District of Florida and in Miami-Dade State Court to confirm
> BUSA's rights to terminate our relationship. It is BUSA's hope that these actions will not
> be necessary and BUSA is willing to dismiss these lawsuits if the parties are able to
> amicably achieve a swift and efficient transition and an agreement that there will be no
> litigation regarding the termination or transition to a new distributor and broker.

[DE-19-1, p. 5-6.]

Three days later, on January 11, 2016, BUSA issued a press release announcing BUSA

had appointed Southern Glazer's Wine and Spirits, LLC, as BUSA's new distributor. [DE-19-1,

p. 3.] Young's was not aware of BUSA's new distributor prior to January 11, 2016. *Id.*

In its January 7, 2016 Complaint, BUSA notes that the 2004 Agreement explicitly

permitted at-will termination, with or without cause, by either party, and contained an expansive

waiver clause.[4] [DE-1, p. 5-6.] Further, the Agreement's forum selection clause identified the

Southern District of Florida and Florida state law as the sole venue and governing authority,

respectively, for contract disputes.[5] [DE-1-2, p. 12.]

---

[4] Attached as exhibits to the Complaint are the 2004 Agreement, the RFP Intent to Bid form, and the RFP Terms and
Conditions, among other documents.

[5] The 2004 Agreement also includes a mandatory dispute resolution clause—not mentioned by either party—which
reads in pertinent part:

> The parties will seek to resolve any controversy, disagreement, claim, or dispute between them which relates to
> or arises out of this Agreement, including, without limitation, the interpretation, breach or termination thereof,

BUSA alleges "upon information and belief" and "BUSA's experience with such termination cases" that a dispute exists as to whether Young's is bound by the 2004 Agreement, whether BUSA violated the 2004 Agreement by terminating Young's without cause or by selecting a new distributor, whether BUSA is liable for damages from its termination of the 2004 Agreement or, instead, whether Young's released all potential claims arising out of the termination of the 2004 Agreement. [DE-1, p. 1-2.] BUSA then request the following declarations regarding the terms of the 2004 Agreement:

> [T]hat Young's Market is bound by the terms of the 2004 Agreement, that the terms of the 2004 Agreement are valid and enforceable, and that BUSA did not violate the terms of the 2004 Agreement in terminating Young's Market [and]…that Young's Market waived and released BUSA from any claims arising out of the 2004 Agreement.

[DE-1, p.17.]

Turning to the RFP Agreement, BUSA alleges Young's expressly waived any claims arising out of the termination of Young's and the selection of the new distributor through the RFP. [DE-1, p. 2.] BUSA then claims "based on past experience" that a dispute exists as to

---

or which is otherwise related in any manner to the relationship between BUSA and DISTRIBUTOR (whether based in contract, tort, statute, or upon any other type of cause of action or theory of recovery whatsoever) (in each case, a "Dispute") in accordance with the following terms and conditions:

. . . The parties shall first attempt to settle any Dispute amicably and promptly by consulting and negotiating with each other in good faith. In the event of a Dispute, either party shall notify the other party in writing regarding the existence of such Dispute (the "Dispute Notice"). If the Dispute is not resolved or settled through direct negotiations between the parties within thirty (30) days after the receipt by one party of the Dispute Notice, then the parties shall seek to resolve the Dispute through confidential mediation within sixty (60) days after the expiration of the aforementioned thirty (30) day negotiation period.  The parties will select one (1) mediator by mutual consent.

. . . If the Dispute is not resolved through mediation . . . then the Dispute shall be subject to the exclusive jurisdiction and venue of the United States District Court for the Southern District of Florida or, in the event that such court does not have subject matter jurisdiction over such proceeding, in the courts of the State of Florida located in Miami-Dade County, Florida (each, the "Court") . . . Further, each party certifies that no representative or agent of either party has represented, expressly or otherwise, that such party would not, in the event of such litigation, seek to enforce this waiver provision. Each party acknowledges that this provision is a material inducement for the other party entering into this agreement.

[DE-1-2, p. 12.]

BUSA's selection of a new distributor and termination of Young's through the RFP. *Id.* BUSA requests the following declarations as to the RFP Agreement:

> [T]hat Young's Market and its affiliates are bound by the terms of the RFP Agreement, that the terms of the RFP Agreement are valid and enforceable, and that BUSA did not violate the terms of the RFP Agreement; [and] … that Young's Market and its affiliates, per the terms of the RFP Agreement, waived and released BUSA from any claims arising out of the 2004 Agreement and the RFP Agreement.

[DE-1, p. 17.]

BUSA also seeks declarations that BUSA's termination of Young's and selection of a new distributor did not violate various federal antitrust statutes and that "no basis exists to enjoin or otherwise interfere with BUSA's business decision to be serviced by another distributor." *Id.* As the basis for a declaratory judgment that BUSA did not violate Section 1 of the Sherman Act, BUSA simply states that it acted independently when terminating Young's and did not act in restraint of trade or commerce, BUSA's decisions have not harmed competition in any relevant market, and Young's cannot allege any injury that antitrust laws were meant to prevent. [DE-1, p. 10-11.] As the basis for a declaratory judgment that BUSA did not violate Section 2 of the Sherman Act, BUSA alleges that it did not act in concert with any other party or in restraint of trade or commerce, it does not possess monopoly power, and its termination and selection decisions were not unlawful predatory or exclusionary conduct and have not harmed competition. [DE-1, p. 11-12.] BUSA's remaining antitrust counts—for declaratory judgments that BUSA did not violate the Robinson-Patman Act or Section 3 of the Clayton Act, and that Young's has no cognizable claims under Sections 4 or 16 of the Clayton Act—assert similarly formulaic allegations.

BUSA's Complaint alleges the existence of a dispute with Young's only "upon information and belief" and "past experience with such distributorship termination cases." [DE-

1.] In its response to Young's motion, BUSA adds as evidence of an actual controversy the litigious history of the alcohol industry, disgruntled emails from *other* terminated distributors, Young's post-Complaint refusal to waive any future litigation, and Young's hiring of civil counsel with antitrust experience. [DE-20.] BUSA also notes that Young's raised certain concerns, post-Complaint and in accordance with the 2004 Agreement, over product shortage, investment funds, and dual distributorship in the last month of Young's distributorship with BUSA. *Id.* There is no evidence that Young's communicated any disagreement to BUSA, in accordance with the 2004 Agreement's dispute resolution clause or otherwise, regarding the actions over which BUSA seeks relief.

BUSA also maintains its decision to terminate Young's and to select another distributor *alone* establishes an actual controversy. [DE-20, p. 7-8.] Despite this position, BUSA sought leave to conduct jurisdictional discovery two weeks after Young's filed its reply regarding dismissal. [DE-23.] BUSA's broad discovery request seeks, for example:

> [C]ommunications from Young's Market related to the termination as well as information regarding retention of counsel or consultants in preparation for the termination . . . information regarding Young's Market's assessment or analysis of potential claims, its contemplation of injury and calculation of potential damages . . . admissions that Young's Market does not seek to sue Bacardi for its termination and replacement by another distributor.

[DE-23, p. 3.] Through discovery, BUSA would seek information regarding Young's actions before *and after* the Complaint was filed. [DE-26, p. 4.] BUSA says the information it seeks would "demonstrate whether there is an actual controversy in this matter." [DE-23, p. 3.] In opposing jurisdictional discovery, Young's maintains BUSA's request is both untimely and unwarranted because the information BUSA seeks would not establish an actual controversy at the time the action was filed. [DE-24.]

- 6 -

## II.    APPLICABLE LAW

### A.  Subject Matter Jurisdiction

Subject matter jurisdiction may be challenged facially and factually under Rule 12(b)(1). *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). While facial challenges consider only the sufficiency of the complaint, taking its allegations as true, factual attacks on subject matter jurisdiction permit the Court to weigh the facts objectively—including testimony and affidavits outside of the pleadings—not just in the light most favorable to the plaintiff. *Id.*; *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). Young's has explicitly lodged a factual attack. [DE-19, p. 2.] Therefore, the Court considered the additional information each party filed.

### B.  Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201, is designed to settle "actual controversies" *before* they ripen into breaches of contract or violations of law. *Hardware Mut. Cas. Co. v. Schantzi,* 178 F.2d 779, 780 (5th Cir. 1949).[6] The Act is a procedural tool to relieve plaintiffs from being forced to choose between suffering legal harm and relinquishing rights. *MedImmune Inc.v. Genentech Inc.*, 549 U.S. 118, 129 (2007). The Act is neither an extension of federal jurisdiction nor an end-run around constitutionally prohibited advisory opinions.

In fact, the Act's "actual controversy" language has the same meaning as the case and controversy requirement of Article III to the United States Constitution. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937). Jurisdiction under both Article III and the Declaratory Judgment Act requires the party invoking federal jurisdiction to show, at an

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

"irreducible minimum," that *when the complaint was filed*: (1) the invoking party had suffered an actual or threatened injury due to the defendant's conduct; (2) the injury can be traced to the challenged action; and (3) the injury is likely to be redressed by a favorable ruling from the court. *Atlanta Gas Light Co. v. Aetna Cas. And Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). Jurisdiction under the Act also requires a *substantial* and *continuing* controversy that is not conjectural, hypothetical, or contingent. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346-48 (11th Cir. 1999). Past injuries alone generally do not establish declaratory judgment jurisdiction. *Id; Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).

Subject matter jurisdiction under the Declaratory Judgment Act is reviewed on a case-by-case basis, and it is often a question of degree. *See, e.g.*, *GTE Laboratories Pub. Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1570 (11th Cir. 1995). Because the usual position of the parties is reversed in declaratory judgment actions, jurisdiction sometimes entails determining whether a coercive action brought by the declaratory judgment *defendant* could arise under federal law. *Medtronic, Inc. v. Mirowski Family Vernutes, LLC*, 134 S. Ct. 843, 848 (2014); *Household Bank v. JFS Group*, 320 F.3d 1249, 1259 (11th Cir. 2003).

The party invoking the court's jurisdiction bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). In light of that burden, the invoking party may be permitted to conduct limited jurisdictional discovery where the information sought would give rise to jurisdiction. *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. App'x 779, 790 (11th Cir. 2014). However, where resolution of jurisdiction does not require additional discovery, such discovery is not warranted. *Id.*

- 8 -

Moreover, even where an actual controversy is established, relief under the Declaratory Judgment Act is discretionary. *MedImmune,* 549 U.S. at 136-37. This "substantial" discretion is exercised in light of the Declaratory Judgment Act's purpose as well as equitable, prudential, and policy grounds. *Id.*; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995).

## III.   DISCUSSION

BUSA's counts can be broken down into three jurisdictional and factual categories: contract claims relating to the 2004 Agreement, claims relating to the terms and non-violation of the RFP Agreement, and antitrust claims. While BUSA contends there is an actual controversy as to each category sufficient to support jurisdiction, the factual basis to support this contention is thin. Further, even if there is an actual controversy as to at least one category of BUSA's claims, the relief BUSA seeks runs contrary to the Act's purpose and to wise and prudent judicial administration. Therefore, as discussed below, the Court declines to exercise jurisdiction over all of BUSA's claims.

### A. The 2004 Agreement

There is no allegation that Young's communicated any displeasure or disagreement as to BUSA's termination of the 2004 Agreement. This is particularly noteworthy in light of Young's having several months' notice and the dispute resolution clause, which mandated prompt and good faith efforts to resolve disputes via multiple informal means prior to filing suit. [DE-1-2, p. 12.] Moreover, one day after filing this action "upon information and belief" that a dispute existed, BUSA told Young's that BUSA "anticipates a smooth and amicable transition" to BUSA's new distributor. [DE-19-1, p. 6.] This strongly suggests there was no evidence of an actual controversy when BUSA filed its Complaint.

BUSA's reliance on an industry practice of terminated distributors suing suppliers over

contract and antitrust claims, prior suits by terminated distributors against BUSA, and emails from *other* distributors is misplaced. *See Atlanta Gas*, 68 F.3d at 414-15 ("[S]peculation based on the insurance companies' dealings with other insureds does not present a concrete case or controversy."); *Brekenridge Pharm., Inc. v. Everett Laboratories, Inc.,* 2009 WL 654214 (S.D. Fla. March 11, 2009) (noting irrelevance of prior litigation in establishing justiciable controversy). To invoke jurisdiction, BUSA must establish an "actual controversy" with *this* defendant that is not conjectural, hypothetical, or contingent; evidence of past, current, or future disputes with other distributors does not satisfy BUSA's burden.

BUSA's emphasis on Young's post-Complaint refusal to relinquish any future claims is similarly unpersuasive. Post-Complaint conduct cannot alone establish the existence of jurisdiction at the time the Complaint was filed. *See Atlanta Gas*, 68 F.3d at 414 (noting a justiciable controversy must exist as of the filing of the complaint) (citations omitted). Nor is inaction—the failure to agree to waive claims—equivalent to the affirmative conduct normally required to establish declaratory jurisdiction. *Bacardi U.S.A., Inc. v. Empire Merchants, LLC,* 2016 WL 1031311, at *2 (S.D. Fla. March 9, 2016).

As an alternative argument, BUSA states that "the very issuance of a notice of termination can trigger the existence of a controversy," *irrespective* of Young's knowledge of or position with respect to either. [DE-20, p. 7.] As support, BUSA cites only two cases: *World-Wide Volkswagen Corporation v. Autobahn Motors Company*, No. 73 CIV. 5104, 1974 WL 878 (S.D.N.Y. May 15, 1974), and *American Machines and Metals Incorporated v. De Bothezat Impeller Company Incorporated*, 166 F.2d 535 (2d Cir. 1948). However, critical facts in those cases are at odds with the undisputed facts of the instant action. In both of those cases, the declaratory plaintiff sought to terminate its contract with declaratory defendant—*but had not yet*

- 10 -

*done so*—and the declaratory defendant *affirmatively* disputed either a breach or a post-termination right asserted by the plaintiff. *Id.* Thus, in those cases, unlike in this one, the Court's ruling had the potential to prevent damages. In light of the material differences with these older cases from another circuit, the support for BUSA's claim that "[o]n numerous occasions courts have held that a manufacturer or supplier's termination is sufficient to sustain the basis for a declaratory judgment suit" is neither factually persuasive nor legally binding.

While termination of the 2004 Agreement *alone* did not create a justiciable controversy, Young's was also aware that the 2004 Agreement had been terminated and could have initiated a coercive action against BUSA in federal court. The existence of this possibility at the time BUSA filed its Complaint brings the termination of the 2004 Agreement closer to the type of controversy over which the Court may exercise jurisdiction. *See Household Bank*, 320 F.3d at 1256-59 (noting jurisdiction exists over a declaratory judgment action if plaintiff alleges facts showing declaratory defendant could file coercive action arising under federal law). Yet the plaintiffs' well-plead complaint in *Household Bank* alleged that their declaratory defendants could file non-frivolous federal claims against them. *Id.* at 1256. Here, BUSA has not alleged that Young's, at the time of filing, could have asserted any non-frivolous claims. Instead, BUSA alleged the 2004 Agreement could be terminated without cause and that Young's affirmatively waived any claims arising out the 2004 Agreement. [DE-1, p. 1.]

Even if Young's awareness of BUSA's termination of the 2004 Agreement does carve out a justiciable controversy as to related contract claims, the Court has substantial discretion to decline jurisdiction. Issuing a declaratory judgment regarding potentially frivolous claims over which there is no evidence of an actual dispute is an abuse of the Declaratory Judgment Act—not to mention judicial resources. *See GTE Laboratories*, 67 F.3d at 1569 ("[T]he practical

- 11 -

likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists.") (citations omitted); *Wilton*, 515 U.S. at 288 ("If a district court, in the sound exercise of its judgment, determines . . . that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."). Further, assuming there is any dispute over the propriety of BUSA's termination of the 2004 Agreement, that termination has already occurred, and a declaratory judgment should not issue over past conduct alone. *See Malowney v. FDIC,* 193 F.3d at 1348 (11th Cir. 1999); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009).

BUSA's parallel state court action against Young's, which remains pending, also militates against the Court's exercise of jurisdiction. Any contract disputes regarding the 2004 Agreement would be decided under Florida state law according to the Agreement itself. [DE-1-4, p. 4.] There is no reason to believe the state court is an inadequate forum for those claims. *See Wilton*, 515 U.S. at 282-88 (approving dismissal or stay of a declaratory action where parallel state court proceedings of the same state law issues were underway); *AmSouth Bank v. Dale*, 386 F.3d 763,786 (6th Cir. 2004) (finding district court abused its discretion in entertaining declaratory judgment action in part because only useful purpose of declaration would be determination of liability on already-accrued damages claim pending in state court). Finally, as discussed below, the court clearly lacks subject matter jurisdiction over BUSA's only claims arising under federal law—its antitrust claims.

### B. The RFP Agreement

BUSA has failed to allege facts that establish a genuine controversy at the time BUSA filed this action as to any aspect of the RFP Agreement or of BUSA's non-violation of the same.

- 12 -

As mentioned, in the summer of 2015, Young's signed the RFP Agreement and agreed to participate in BUSA's RFP process to select a new distributor. Before notifying Young's that it was not selected, BUSA chose a different distributor and filed the instant Complaint.

Young's lack of knowledge that it had not been selected through the RFP process is doubly significant. First, when BUSA filed its action, BUSA did not know whether Young's disputed its non-selection. Second, unlike BUSA's termination of the 2004 agreement, Young's had no basis to file a coercive action regarding the RFP claims BUSA now asserts because Young's was unaware of any injury. *See Household Bank*, 320 F.3d at 1256-59 (noting declaratory judgment jurisdiction exists where declaratory defendant could file non-frivolous coercive action). In light of Young's ignorance of its non-selection at the time of the Complaint, BUSA's assertion that "upon information and belief" a dispute existed is unfounded. *See Atlanta Gas*, 68 F.3d at 414-15 (dismissing declaratory claim where plaintiff "filed its complaint as an anticipatory maneuver designed to preempt whatever actions [defendants] may have taken after they received [plaintiff's] notice"). Hence, the court lacks subject matter jurisdiction over BUSA's RFP claims. *See id.* at 414 (jurisdiction must exists at the time the complaint was filed).

Moreover, even if subject matter jurisdiction did exist over BUSA's RFP claims, the Court would decline to exercise jurisdiction for the same reasons articulated as to the 2004 Agreement. Young's has already incurred damages, if any, resulting from BUSA's selection of another distributor in the RFP process. BUSA alleged no facts which support the existence of a continuing, substantial controversy or avoidable damages. Further, any claims that might exist regarding the RFP Agreement's terms are equally suitable for resolution in state court, where they remain pending. Finally, BUSA's only federal question claims are entirely conjectural, as discussed below. Issuing the declaratory relief BUSA requests would not serve the remedial

- 13 -

purposes of the Declaratory Judgment Act and would not only be unwise but also a waste of judicial resources.

### C.  Antitrust Allegations

The general objective of antitrust laws is to maintain competition. *Antitrust Law, Black's Law Dictionary* (10th ed. 2014). Establishing competition is fact-intensive, and its contours are not easily defined. *Id.* However, in lieu of facts to support its antitrust claims, BUSA offers conclusory antitrust defenses, lawsuits by *other* distributors, and Young's hiring of civil trial counsel with antitrust experience—without any legal authority holding these facts are sufficient to create an antitrust case or controversy. Thus, BUSA not only failed to establish a dispute with Young's regarding its antitrust claims, but also failed to allege any facts regarding the manner in which BUSA chose its new distributor over Young's, much less any other predicate facts suggesting any potential antitrust violations. Therefore, BUSA's antitrust claims are conjectural—at best—and declaratory judgment is unwarranted. *See Maryland Cas. Co. v. Pacific Coal & Oil. Co.*, 312 U.S. 270, 273 (1941) (noting facts alleged must establish controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment") (citation omitted); *Malowney*, 193 F.3d at 1347.

BUSA asserts dismissal of its antitrust claims is not justified unless the Court finds them absolutely devoid of merit or frivolous, and cites *Household Bank,* as support for this standard. 320 F. 3d at 1254 (quoting *Baker v. Carr*, 369 U.S. 186, 199 (1962)). However, in doing so, BUSA conflates two distinct bases to dismiss purported federal claims for want of subject matter jurisdiction: that the claim does not actually arise under federal law, and that the claim does not present a case or controversy. *See Baker v. Carr*, 369 U.S. at 198-99 (addressing two-fold analysis and holding that, where a controversy clearly existed, dismissal for lack of jurisdiction

- 14 -

was unwarranted because the purported federal question claims were not entirely meritless or plainly frivolous). Here, Young's argues only that BUSA has not established a case or controversy—and the Court agrees.

BUSA also argues Young's is barred from asserting a lack of jurisdiction because Young's previously relied on federal question jurisdiction when Young's removed certain state cases filed by BUSA.[7] However, federal question removal relies on the *face* of the complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added). Assuming *arguendo* that BUSA is correct regarding estoppel, Young's would only be barred from a *facial* attack on subject matter jurisdiction. Young's has instead mounted a *factual* attack. [DE-19, p. 2.] Therefore, Young's is not estopped because Young's does not have to accept the Complaint's allegations as true and alleges, instead, there is no subject matter jurisdiction *in fact. See McMaster*, 177 F.3d at 940.

However, even if BUSA's antitrust claims did present a justiciable controversy, the Court would exercise its discretion and decline to decide them. This Court agrees with many others in finding that declaratory actions which merely assert anticipatory defenses to past events are a perversion of the Declaratory Judgment Act. *See, e.g., Hanes Corp. v. Millard*, 531 F.2d 585, 593 (D.C.Cir.1976) (superseded by statute on other grounds); *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, 2011 WL 5245192 at *5 (S.D.N.Y. Nov. 2, 2011); *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007); *see also Terra Nova Ins. Co., Ltd., v. Acer Latin America, Inc.*, 931 F. Supp. 852, 854-55 (S.D. Fla. 1996) ("A declaratory judgment is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.") (citations omitted).

---

[7] BUSA voluntarily dismissed these cases after removal and then re-filed state actions against Young's without antitrust claims.

### D. Jurisdictional Discovery

After Young's motion to dismiss was fully briefed, BUSA moved for leave to conduct jurisdictional discovery. However, jurisdictional discovery is not necessary because the Court is exercising its discretion to decline jurisdiction—whether or not there is subject matter jurisdiction as to all or some of BUSA's claims. *See RMS Titanic*, 579 Fed. App'x at 790 (finding denial of jurisdictional discovery not an abuse of discretion where facts plaintiff sought "would not have affected the district court's jurisdiction").

## IV.    CONCLUSION

BUSA's January 8, 2016 letter to Young's speaks for itself as to BUSA's intentions in filing this lawsuit. It is a self-described "precautionary measure to protect [BUSA's] interests [and] to *confirm* BUSA's rights to terminate our relationship," which BUSA hoped would ultimately be unnecessary, since BUSA "anticipate[d] a smooth and amicable transition" to another distributor. [DE-19-1.] BUSA has already taken action by terminating Young's and selecting a new distributor. Any damages caused by BUSA's actions are no longer avoidable. A declaration from this Court would not alter BUSA's course of action, and nothing BUSA has alleged suggests Young's can or will do anything about BUSA's chosen course. Hence, even if the nebulous standards to determine subject matter jurisdiction may be stretched to incorporate BUSA's claims, the Act's long-standing purpose "to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty," *Hardware Mutual Casualty Co.*, 178 F. 2d at 780, is simply not served by the relief BUSA seeks. *See Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991) ("In promulgating the Declaratory Judgment Act, Congress intended to prevent *avoidable* damages from being incurred by a person uncertain of his rights *and threatened with damage* by delayed adjudication.") (emphasis added); *Sierra*

*Equity Group*, 650 F. Supp. 2d at 1231 (declining jurisdiction over contract claims where alleged breach already occurred and judgment would not "lead to a change in conduct by either party in order to conform their behavior to the law or to minimize the danger of future monetary loss by the parties").

BUSA's voluntary dismissal of twenty-three of its twenty-nine federal lawsuits for declaratory relief against terminated distributors suggests BUSA has largely won its race to the courthouse. While BUSA's resort to mass preemptive litigation might have been a clever business strategy, the Court can and will decline BUSA's invitation to use the Declaratory Judgement Act and limited judicial resources to approve past business decisions over which there is no apparent dispute.

Accordingly, the Court declines to exercise jurisdiction over this case, and it is hereby ORDERED that

1)  Defendant's Motion to Dismiss [DE-19] is GRANTED; and

2)  Plaintiff's Motion for Jurisdictional Discovery [DE-23] is DENIED; and

3)  Plaintiff's Complaint [DE-1] is DISMISSED without prejudice.

4)  Any pending deadlines are CANCELLED and any other pending motions are DENIED as MOOT.

5)  This case is CLOSED.

DONE and ORDERED in Miami, Florida, this 31st day of May, 2016.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record

- 17 -